Thank you, Your Honor. May it please the Court, on behalf of Mr. Melgar and Mr. Morales, we respectfully submit that the issue for Your Honor's consideration is whether the District Court properly denied our motion to dismiss Clause 16 of the indictment on double jeopardy grounds. And let me begin by quoting from United States v. Guzman, which says that a single conspiracy exists for double jeopardy purposes where there is one overall agreement to perform a variety of functions to achieve the objectives of the conspiracy and may include subgroups or subagreements. And that's exactly what we have here, Your Honor. Our clients, Mr. Melgar and Mr. Morales, were prosecuted in the 2007 indictment related to a specific set of allegations. The sale of a methamphetamine to an under-cooperating individual, the first overt act and the check for that indictment was August 29, 2006, and the second overt act was the sale to a confidential informant in December 2006. Those same allegations were then incorporated into this much larger indictment that related allegedly to the MS-13 group, and we maintain that the law and the facts are that this agreement in 2006 was a subagreement or part of the 2009, that larger agreement alleged in the 2009 indictment. And there are three specific issues with regard to that that I would like to address. First, as this Court is aware, in United States v. Bendis, this Court said, or specifically held, that when a defendant makes a non-frivolous showing of a double jeopardy violation, the government must, and they used the term must, a directive, produce evidence that would indicate the existence of separate conspiracies. And in this case, the government has not done that. They elected simply to rely on the allegations of the indictment and, to some extent, on evidence that was produced by the defense and was attached to their various motions to dismiss. And in most of the cases that the Court has addressed this issue, the government has done much further than that. And, in fact, in Bendis itself, there was a prosecution in Kansas related to the possession of a fraudulently obtained money order against the defendants. Simultaneously, there was a charge in Hawaii related to the same defendants who were attempting to obtain, I guess, loans from various contractors. There was a trial in Kansas, and there was a conviction. And, in response to the defendants' double jeopardy motion in Hawaii, the government produced an extensive, I guess, proffer of what it proposed to prove. And the Court said, in analyzing the other factors, that that was sufficient to show that there were separate conspiracies. In this case, the government didn't do that, nor did it do what the government did in Ziskin, which is to produce the transcript of the prior trial and to produce the 302s and other evidence that it would be using to show that the allegations in the second indictment were a separate conspiracy than in the first one. They also did similar proffers in Guzman and Stoddard. And the only case that the government conspired for that this did not happen, or they maintained did not happen, was in the El Jerjima decision. In that case, the defendant was prosecuted and convicted on continuing criminal enterprise charges and drug distribution conspiracy charges in the Middle District of Florida. He was subsequently indicted in Montana for various actions related to laundering of those drug proceeds and various financial crimes related to that. And in Florida, there was a trial, and obviously the defendant in that case was found guilty. And although it's not clear from the facts in El Jerjima, there seems to be an extensive discussion as to what the evidence would show in the Montana trial. Now, the court in El Jerjima did cite Vindas, but it didn't cite the specific provision in Vindas that directed that when the defendant makes a non-criminal showing of a double jeopardy violation, the government must come forward with proof that there in fact are two conspiracies. So the only language they used was that the indictment in Florida was different than the indictment in Montana. So in other words, there's really no analysis, so we maintain that the government's reliance on El Jerjima is misplaced. So how did the notion – how did it come about that – or who raised the suggestion that after finding that there was no double jeopardy, that portions of the indictment should be stricken to, I guess, mediate the lack of double jeopardy? Judge Reel did, Your Honor. He came up with that on his own? Yes. He did not request that? No, we did not request that. He responded during my similar argument I just made to Your Honor. Judge Reel asked me if striking portions of the indictment related to the drug distribution and methamphetamine distribution of Mr. Morales and Mr. Melgar would – striking that from count 16 in the indictment would suffice to address the double jeopardy concerns. My response was that I didn't think it was sufficient that the entire count had to be dismissed if there was a double jeopardy violation. But what appears to have actually happened was that Judge Reel essentially granted my – our motion in part and denied it in part. He denied it with regard to the greater conspiracy, but granted it in part from the point of May 2007 until January of – I'm sorry, May of 2006 to January of 2007. And we maintain that he actually had authority to do that because his concerns were double jeopardy. And as we discussed in our reply brief – But that time period corresponds with the time period of the prior conspiracy charge against your client, correct? Well, we maintain that it does because the prior conspiracy charge against the indictment – or excuse me, against our clients – alleged the conspiracy beginning on an unknown date and continuing to December 12th of 2006. What I – what it appears that Judge Reel was doing in extending until May of 2006 through January of 2007 was addressing the specific methamphetamine distribution allegations against Mr. Morales and Mr. Melgar in the indictments. Now, there's prior allegations against my client that he possessed with an intent to distribute crack cocaine in 2003. That is obviously outside the window of the excluded – or the stricken counts. But the discovery showed, and the allegation in the indictment has shown, that beginning in May of 2006, Mr. Morales and Mr. Melgar engaged in a series of transactions in which they distributed to government confidential informants methamphetamine. They would leave the – and it related to the same residence on Sierra Vista Avenue in Los Angeles. Essentially, Mr. Melgar would negotiate the sale of the methamphetamine, and then he, assisted by Mr. Morales, would bring it back to the house and would distribute it. So, it appears that Judge Reel's concern was that the specific allegations on the first conspiracy charge with regard to August the 29th, 2006 and December the 12th, 2006 were a portion of this slightly larger window in which Mr. Melgar and Mr. Morales were possessing with intent to distribute the methamphetamine. Judge Reel appears to have left standing intact the prior allegations of the crack cocaine and the larger allegations against Mr. Melgar and Mr. Morales with regard to other distribution activities of the MS-13 gang. And we maintain, because Judge Reel reached that decision based on the double jeopardy clause, that the United States has no – or this Court has no jurisdiction to appeal that order under Section 3731. Now, the government has maintained that it does have – that this Court does have jurisdiction to hear that double jeopardy – to hear the appeal from that order, even though it did address double jeopardy concerns. However, the cases cited by the government, particularly those for flagging, are inapplicable. For example, it cites U.S. corrobors – Why don't you think this ruling is just so inextricably bound up with the striking? Because regardless of how – why he struck portions of the indictment, what he was trying to do, it looks like, was not dismiss your – dismiss the drug conspiracy charge against you on grounds of double jeopardy, but to do something that – but it's finding that there was a problem with the – a double jeopardy problem to do some remedy short of that. And I just think that probably that can't be done. Like I asked earlier, it either places your client in double jeopardy, or it doesn't. And if it does place your client in double jeopardy, then it should be stricken on that ground. You can't just strike aspects of the indictment. You strike the charge. Well, that is certainly what we argued in front of the district court, and it's what the government argued as well. However, that's not what the court did, and we maintain that because it did what it did and based it on double jeopardy concerns, that that deprives this court of jurisdiction under 3731, because the government cannot appeal an order striking – dismissing an indictment or a portion of an indictment on double jeopardy grounds because the defendant has already been put in jeopardy for that. And I – so our position is that at least with regard to the government's appeal of battle work, that the court has jurisdiction. Let me ask you something. Could the government – the government right now is free to file a superseding indictment to change aspects of this indictment, right? I presume that they are. I don't think the statute of limitations has expired. I don't know that if the court has stricken or essentially dismissed portions of count 16 related on double jeopardy concerns, that the government would have the power then – Well, he didn't – the court didn't expressly state that. No, you're – He did not. We're reading this into what he said. He did say in order to correct or use some words like correct, but he did not say he was striking it on double jeopardy grounds. Let me ask you a different question. Is – are you arguing that the government has to wait to – until it can prove a grand conspiracy and it has to bring also overt acts investigated before it can charge various of the actors in the conspiracy with separate counts related to the bigger conspiracy? And I think we have case law that says that you can successively charge a defendant with a substantive count and a conspiracy count. Yes, you can certainly successively charge a substantive count and a conspiracy, yes, Your Honor. But I'm not sure I understood the court's question. So you're – but here your argument is you were previously charged with – your client was previously charged with conspiracy and then subsequently charges conspiracy and the government has basically split up the conspiracy and charged it separately, which we're not supposed to allow under Braverman. Correct. So that's the gist of your argument. Yes, Your Honor, that the 2006 conspiracy that was charged in 2007 was a subset of this much larger conspiracy that the government has now alleged. My question is what is the government supposed to do? Just let someone who they have evidence of, again, stay on the streets and keep participating in the grand conspiracy while, you know, causing a danger to public safety, et cetera, while they're trying to prove up the greater conspiracy? Well, Your Honor, they certainly knew about the greater conspiracy at the time that they charged the smaller conspiracy, for want of a better term. So we have that – we have evidence of that in the materials that we took judicial notice of. But do we – the result, you're speaking, would be that we would have to send this back to Judge Rill to make a finding of that because there's been no actual finding that the government could have charged the current conspiracy when it charged the earlier conspiracy. There has been no finding in that regard. In fact, there's been no evidentiary ruling at all. So do we need to send it back for an evidentiary ruling? Well, Your Honor, yes, unless the court can determine that as a matter of law, that based on the facts that were before the court, which we maintain were insufficient, to meet the government's burden of proving up that there was separate conspiracies. Unless the court concludes that there was enough evidence with the indictments, then it should be sent back for an evidentiary ruling. I'm sorry, go ahead. I was just – I'm not really clear on what a remedy would be because the government does have this burden of coming forth with evidence. The government didn't meet this burden, but we certainly can't make an evidentiary ruling. I understood you to say really that Judge Rill couldn't have made the decision he made with what he had. So it should go back for a – some kind of hearing where the government comes forward with proof and then Judge Rill would – Yes, that's our position under the business portion of our argument. Now, my next question is do you share the view of one of your colleagues that it should not go back to Judge Rill? We do not oppose that. Okay, fair enough. You're out of time. Thank you. Who's the – who's up next? All I know is Mr. Freeman's last. Good morning. Good morning. Tom Kielke on behalf of Mr. Ramones and Dehas. Good morning. We put seven minutes on the clock for you. Thank you, Your Honor. And if I quit before half is zeroed out, that will be my rebuttal time? Sure. All right. I wanted to just briefly cover a couple of points that are different in my papers from some of the other defendants. One is that there was a plea agreement in my case that specifically – whereby the government specifically agreed not to prosecute other conduct. There was some specific conduct that was mentioned and then – Doesn't the government concede that, as Mr. Dehas, the district court correctly struck the Able 12 Act? They do, Your Honor. Okay. However – You think they should have been more stricken? I do. And the reason for that is the language in the plea agreement is fairly broad and it refers to – this is under the government's obligations. And on my documents it says excerpts of record – my excerpts of record starting on page 318 and – So we're talking about Mr. Dehas now? Yes. The plea agreement? Yes. Page 12 of the plea agreement? Yes, Your Honor. Okay. What are you pointing to? What language are you – Well, it is – the subparagraph E, the first sentence, relates specifically to the Able 12's conduct and that's the subject of the government's concession. One of the things I want to point out as an aside is one would think – I, of course, wasn't representing Mr. Sinday half of the time, but I certainly would have thought and I think Your Honors may think that you wouldn't need to separately specify in a plea agreement. Oh, and we won't also prosecute you again for the very conduct that you are pleading guilty to in this case. Okay. Okay. But the first sentence you just quoted is, they agree not to prosecute any 841 or 846 charge arising out of the 412-2006 distribution. Correct. The next sentence says the defendant understands that they're free to prosecute him for anything else. Right. What's the problem? Well, I'd like the court to focus on any other unlawful conduct and the suggestion is that in that context, other unlawful conduct relates to other unlawful conduct other than the conduct not just of the April 12th, the conduct arising out of this conspiracy. I'm not sure I followed that. The next sentence says the defendant understands that the USAO is free to prosecute the defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of the agreement. It sounds like they can do anything he did before, anything they can do after, just not what's specified on April 12th, 2006. That is a reading of it and my suggested alternative reading is that that sentence is not limited by the sentence that comes before it and in that context, other unlawful conduct refers to other unlawful conduct beyond the scope of this conspiracy and this investigation, which applies to everything that my client has been charged with in Count 18. Great. Wasn't Davis charged in this indictment where he claimed guilty to conspiracy as well as a substantive drug count? Yes, Your Honor. And what the government did essentially, and I see that I'm running out of time, so I'm going to move on to the issue. The government, and Your Honor, I want to, Judge Wortswell, I want to focus on your question to private counsel about what would the government do. It wasn't the case that the government didn't know about the larger conspiracy. If Your Honors look at the overt acts that are mentioned, there's 150 overt acts mentioned in the 2009 indictment. None of them post-date the date of arrest. There was a major takedown on November 15th of 2007. Some of the defendants had been arrested earlier, but they were all arrested by November 15th, 2007. None of the overt acts in the 2009 indictment post-date those arrests. So everything that they knew to charge at the time of the 2007 indictments, it was already done, and when they recharged it in 2009, essentially all they did was take bits and pieces of other smaller indictments and sort of put them all together, and that became Count 16 in our indictment. So all of these defendants have been in jail for one reason or another. They've been in custody since 2007. Yes, correct. For one reason or another. Yes. And... Not all of them 2007. Mr. Defendant Alfaro was, I think, arrested earlier, but the vast majority of them were arrested in 2007. That was the large takedown, and that was the issue that I'm complaining about, that when they filed the case information sheets, they did not notify counsel or the court that these cases were related to each other, and they clearly were related because they were all arising out of the same larger conspiracy, the so-called MS-13 conspiracy, and that idea wasn't a secret. It was something that was mentioned in the government's sentencing documents. It was mentioned at the sentencing proceedings, but the defendants and their counsels weren't aware of the connection, and subsequent counsel wasn't aware of the connection either because of the way the documents were filed. It was quite an investigation to discern these connections. John, do I have another question? I guess, so your bottom line is that they were to, or that because he was charged with Sundehas, that the entire Count 16 should have been stricken? Yes. Yes. And a very simple, large, big-picture way to state it is that he took all of the smaller indictments from 2007 and earlier and just stacked them all up, you would essentially get Count 16 in the current indictment. And that's exactly what Bendis says you can't do. You can't split and then have succeeding prosecutions. Okay. Thank you. Good morning. Good morning, Your Honors. My name is James Cooper. I represent Jose Alfaro. And Mr. Alfaro, to follow up what the judges mentioned a few seconds ago, was actually indicted in 2005. So he's been in custody since 2005. And the point that I want to get across to the judges is, and I tried to discuss it in my brief, but it's finally come to fruition in the past couple weeks when I thought about it more, is that the government's refusal to disclose all the information to Mr. Alfaro's counsel in 2005 actually interfered with his right to the effective assistance of counsel. Because I think if Mr. Alfaro's prior counsel had been aware of the scope of the investigation, Alfaro's prior counsel was unaware that there were wiretaps. He was unaware of related defendants. He was not aware of the scope of the investigation. Now, as a seasoned attorney, the prior counsel, I'm sure, had some inkling that there was something out there because there was an informant who had set up Mr. Alfaro. And the way the indictment was alleged, you have to infer that there may be some other people that the government could indict. But the government did not indict in a joint prosecution. So, the government then approaches Mr. Alfaro's counsel, proposes a plea offer, tells the counsel, it's a good offer, you should take it. The government is working at an advantage. The defense counsel is at a disadvantage. He doesn't know the scope of the investigation. So, based on the information that is disclosed to the attorney, he talks to his client, tells the client it appears to be a fair offer, and Mr. Alfaro accepts the offer. In late 05, he's sentenced in 06 to a significant prison sentence, and before he's released, he's indicted in 09 on the same conduct. Is there any case that says the government has to make these kind of disclosures? Well, there's the Krasin case that this court, not this court, but it came out of the circuit. I can't recall the year. And Krasin says that if the government knows of information that might have made a difference to the defense counsel, it has a duty to disclose it. And in this case, the government had to know about the scope of the RICO investigation. There's the privity of prosecutors, a lot of the prosecutors who were involved in the previous indictment or involved in the 09 indictment. Same investigators. We talked about Flores in this matter here. He was an investigator throughout this proceeding. Some of the same informants, cooperating witnesses, police agencies. So the task force basically consists of the same people. It sounds like you're making an argument as to a collateral challenge to the prior plea agreement that it was entered into without unknowingly or without having had the proper disclosures. Well. It sounds like a collateral attack to that, not it. Well, we don't want to attack the prior prison because Mr. O'Farrell has completed that prison sentence. He is now facing this case now. So it wouldn't gain us anything by attacking the prior plea agreement because he can't undo the time he's already served. But I think the point that I'm getting at is that the case law is apparently against us on this double jeopardy issue. However, the philosophy behind double jeopardy is with us. And the philosophy is this, Your Honors, is that the government, if it knows about alleged crimes at the time it chooses to indict, it should indict on all known crimes. Because double jeopardy is premised upon the notion that you cannot keep on nitpicking the defendant, that you can't indict him on one transaction, on one act within the transaction, let him serve his time, come back and get him again, let him serve his time, and come back and get him again. And that's the problem with the same charge versus conduct distinction. And although most recently, a few years ago, the U.S. Supreme Court in a 5-4 decision went back to the same charge rule, it was 5-4 and Justice Souter did point out in his dissent that the prosecution really has to file everything it needs to do so if it knows about the prior conduct. Because you just cannot expose defendants to this constant harassment. And I know in theory, you may say same charge, but it is a tremendous burden upon the defendant who's serving 8, 9 years in prison to then face a new charge where he's going to face a new 10-year term consecutive to what he's already serving based on the same conduct. And that is really unfair, and that's what we're talking about. So it is fundamentally unfair, but go back to my initial point is that the government's omission, that their willful refusal to tell prior counsel about the scope of the investigation, scope of the indictment, it interferes with that attorney's ability to effectively represent Mr. Alfaro. Because had he known about that, he would have said, hold on, I'm taking a step back, we need to discuss other issues. And I have a minute left, so if you have any questions, I'll take them right now. So we'll keep a minute on the clock for you in rebuttal. Thank you. Sure. Good morning. Good morning, Your Honors. Jan Norman on behalf of the defendant, Carlos Fuentes. I'm in the unenviable position of having a slightly different defendant. My client was indicted on two substantive counts of trafficking in narcotics. He entered, well, he eventually entered a plea agreement regarding these, and I am well aware of the fact that under United States law, particularly the case of Felix and Dixon, the United States Supreme Court has said that it's permitted to take two, a situation like this, two substantive counts in a conviction and then subsequently charge a conspiracy involving those same two substantive counts. What I would like to say is that if you look at both the Felix and the Dixon cases, what you see is that in both of those situations, the jurisdictions were different. You've got a situation where in Felix, it was a Missouri trial followed by charges in Oklahoma. In Dixon, it was a state trial or a state equivalent. It was the District of Columbia followed by federal charges. And in the case that the judge real relied upon in denying the double jeopardy argument, the Sakoshi, I think I pronounced that correct, the Ninth Circuit case, 1994, it was a Rhode Island RICO case based, and then there was a second indictment in California. Now, I'm also aware that the Ninth Circuit has, in the Ford case, upheld the situation where it was the same jurisdictions. And I would ask that the court reconsider that situation, particularly in the light of the facts in this particular case involving Mr. Quintus. What you've got here is really, I believe, an egregious example of double dealing. When Mr. Quintus pled guilty in 1908 to the 1907 indictment, one of the plea agreement terms was that they would not, the government agreed not to prosecute him under Section 18 U.S. Code 922, possession of an assault rifle. They said they were not going to prosecute him for that. Now, they then turn around and name as an overt act in Count 16, which is part of Paragraph 15, Paragraph 50 is incorporated. So Count 16 mentions as an overt act the same possession and sale of the same assault rifle in April 4th. Now, obviously, they don't technically charge it as a 922, but what they do is they then just use it as an overt act. And it's overt act number 102. Similarly to one of the other defendants, the plea agreement talks about defendant understands that the government is free to prosecute defendant for any other unlawful past conduct. Now, in my case, the other is significant because what I see this as saying is that other than the two substantive drug counts that are the focus of that plea agreement. Yet, if you look at the overt acts alleged in Count 16, the same two substantive claims are alleged. Substantive drug transactions are alleged as overt acts. Then what happens in this case is that after the plea agreement is signed, the government files a sentencing memorandum. And in the sentencing memorandum requests that the client receive the highest possible guideline sentence. And the justification for that is the same overt acts that are charged in the indictment. So at the time when he's being sentenced in 2008, we've got eight of the overt acts which involve criminal behavior. We've got the two substantive counts of drug trafficking, and we've got the assault rifle. And all of those the government uses to argue that he should receive the top of the guideline range. That's not enough. They also then, as part of their sentence argument, add a declaration by Detective Flores saying that, oh, and by the way, this guy was also involved in a plot to murder me. So at the time that my client is sentenced and the time that he's entering, he's charged in 2007, they know and they have the information regarding all of these overt acts as well as Detective Flores. And yet none of that's disclosed. And they go forward and try to get him a maximum sentence. Not having succeeded, or for whatever reason, they then indict him a year later using the same acts that they've tried these sentencing on before as well as the same acts that he's actually been sentenced in the substantive claims. If there are no other questions, I'll reserve the meeting time. Thank you. Thank you, Ms. Lurie. Good morning. I am Philip Teich and I represent Mr. Juan Fuentes. I have two minutes. I will not take anyone here that long. I have essentially joined in the position of my colleagues in the double jeopardy issue. In its letter brief, the government has indicated that there is an issue with regard to whether or not a notice of appeal was filed in this case. I would simply point out that the docket, the appellate docket in this case, reflects that a notice of appeal was filed on the 18th of October of last year. And I think that's pretty consistent with my memory. And so I do think that that issue is, other than that, I have nothing more to say. Thank you, sir. Your Honors, again, Michael J. Truman appearing before Mr. Fovell. Let me begin by addressing some of the questions that were raised in some of the earlier comments. The first one is that in Mr. Fovell's case, we did both a motion to dismiss Count 16 with regard to a double jeopardy claim. We also filed, as part of that motion, to strike certain overt acts, both from Count 1, the racketeering count, and from Count 16, the drug conspiracy count. So we approached the problem that was raised earlier, potentially, as to how you go about addressing what kind of relief may be appropriate here. We went about addressing it two ways. One way was the motion to strike, and the second way was the motion to dismiss, depending upon what counts we're talking about. The concept in Mr. Fovell's case of there being a grand conspiracy and a smaller conspiracy is a practical matter, not talking about the racketeering case, but talking about Count 16, the drug case. There is no greater drug conspiracy and smaller drug conspiracy. With regard to Mr. Fovell, they are exactly the same. You can tell that they are exactly the same, because all of the drug allegations in the one case are included within the other case. The question about returning for an evidentiary hearing, it's my position, based on the showing that we have made, is that Judge Reel, while he struck one overt act, was, at a minimum, incorrect, and that's why we appealed in not striking all of the overt acts that we identified. We also submit that he was incorrect in not striking Count 16, because Count 16 is duplicative of the conspiracy count that my client pled to earlier. Could you just elaborate that in terms of, say, the Arnold factors, you know, the time periods, and how are they the exact same time period? If you – we set them out, and I've also – if you take each one of the overt acts from the current indictment, and you go back, and we have compared them in the brief that we submitted, and you go back and you look at the charges in the underlying original indictment, they're exactly the same. The dates on which certain events take place, the amount of the drugs involved in particular transactions, the references to who else may be involved in that, they are exactly the same from both of those two cases. There are no drug conduct differences between the two. The only place where you can find any difference has to do with a couple of allegations relating to weapons, and even those allegations are included in the underlying sentencing material for the first case. So there is no distinction in time period. There's no distinction in amount and nature of drugs. There is no distinction in participants. There is no distinction in locale. They are the same, and the language demonstrates that because in several cases, the overt acts are word for word the same as what's reflected in the underlying case. It's our position that the way to go back and look at Mr. Hovell's position is to start with his plea agreement. In the original case, which is contained in part in Volume 2 of our excerpt of records. And what you notice in looking at the plea agreement on page 134 of Volume 2 is two things. Those are both of the counts that Mr. Hovell was going to plead guilty to under the plea agreement. The first one is a conspiracy count, and the second one is a substantive count, but the substantive count is established by virtue of a co-conspirator liability specifically set out in the plea agreement. So what you understand from that is even though there sometimes is a discussion between substantive counts and conspiracy counts, in this case, in my client's case, his liability on the substantive count is a co-conspirator's liability. The next thing to look... Is it possible to have conspiracies that overlap? It is possible to have conspiracies that overlap, but if they overlap, then there has to be something either on the front side or the back side that's different. Now, could... That's not the case. I think if I understood Mr. Fry's point correctly, the problem here is Judge Reel purported to deal with this without requiring any evidence to show that there is more or less on the front side or the back side. Is that your view, too? It is my view, and beyond that, in my case, we provided Judge Reel with the underlying material that we've also provided to this Court to demonstrate that they're the same. Well, if we agree with you, should we send it back for a hearing where this gets decided on evidence rather than on the paperwork? Is that... It's not necessary in my client's case for it to go back to make that determination because the documentation from the underlying case, which includes not only the allegations but the plea agreement and the filings by the various parties, when compared to what's reflected in the particular overt acts we're talking about, demonstrate that they are exactly the same. There is no basis to draw a distinction. You don't need any evidence to go beyond that because, quite frankly, it's clear on his face. Did Judge Reel consider the materials you submitted to him for any statements you have back in the record? Sort of calls for a conclusion. Calls for a legal conclusion, a factual conclusion, and there was no indication other than the fact that Judge Reel in his ruling did select an overt act and strike it. So he must have gotten that somehow. I could flatter myself and say he got it because it was contained in my paper. I want to make sure I'm clear on this. There's so much stuff here to go through, but if you go back and look at the plea agreement of your guy and the indictment now, there's going to be nothing in the indictment that's in addition to what's in the plea agreement. Do I hear you right? If you go back, and you can use my briefing outline, and you look at each one of the allegations in count one, and if you look at the similar allegations in the underlying original indictment, the only difference you are going to find is, as I mentioned before, two issues relating to a weapon. That's in count one. And that's in the overt acts, which are in count one and incorporated by reference in the count 16. Does count 16 have anything extra? No. All the overt acts, the way it was pled, from the entirety of count one, are transferred into count 16. If you take out the drug allegations, they are the same, and they're also the same as the drug allegations in the underlying indictment. Gotcha. Okay, I see you're out of time. Thank you. Thank you. Good morning again, Your Honor. Daniel Levin for the government. I'd like to start with focusing on the double jeopardy issue in the 846th. There's seven defendants here. Two of those defendants have prior 841s, but not 846s, and I'd like to take those for a moment off the table and focus in on the four defendants who are appealing who have prior 846s in Dayhoff's, defendant Uvell, and Melgar and Morales. I think that's the heart of the issue in front of the court, which is the double jeopardy issue.  Dayhoff, Uvell, and Melgar and Morales, who are appellants appealing the denial of their double jeopardy motions, who have prior 846s and were charged again under the same statute. Right. I think that's the heart of the issue here today. Well, wait a second. I think you're narrowing the issue because if we granted judicial notice to all the other materials, and I think Gulenkis and Hobel would come within that concession of the government, or focus of the government, based on those. You're talking about the issue of should the government have told them or given them more information in 2007? Was there a problem with it? No, I'm talking about whether, in fact, if you look at all the evidence, that they were basically charged with a smaller piece. Gulenkis also has a prior 846. That's correct. He is not an appellant, although I think- Well, we think he is. That's fine. He also has an 846. I don't mean to- You meant about Uvell. Uvell, I'm sorry. I meant to mention. Yes. Uvell. Let me start from the beginning. Cindejas, Gulenkis, Uvell, Melgar, and Morales have prior 846s. And the issue is, was it the same agreement? That's what the Arnold factors are getting at. Is this the same- In 846, the crime, of course, is the agreement. It's not the overt act. It's not the conduct. It's the agreement to sell drugs or distribute drugs or possess and attempt to distribute drugs. And it's the government's position that these two- When you look at the prior agreement and when you look at the current agreement, they're different in character, they're different in duration, they're different in nature. The prior agreement are all agreements to sell drugs on one or two or three or a series of dates where the defendant agreed with one or two other people. But that's how the government charged them. Yes. It's not necessarily what the prior agreement was. Well, let me respond in two ways to that. I think there's two- I want to be- I think there's two issues. One is, what was charged? And there's a separate issue of what we could have charged. And I understand those arguments. Those arguments, I don't think, are double jeopardy arguments. Not that they're arguments the defense can't make. Those arguments, I think, fall under Krasin and Clark, and they're really arguments that you process about, this was an unfair charging decision. No, that's not what I'm talking about. I'm talking about the issue of whether the government, due to the nature of its charging decision, violated Braverman by charging only smaller pieces of the conspiracy when there really was- Wait a minute. I understand your honest question. The government can't break up. It can't charge the first three weeks and the second three weeks and so forth. And you apply the Arnold-Thatcher proportion. Yes, to decide. You look at what is the agreement. The difference here is, when you look at what kind of agreement the second one was, the way it's charged and the means and methods, this wasn't just defendants got together and sold drugs. This was defendants are charged with running a drug organization which hired, has these wholesalers, the mayoristas, and the street-level dealers, and that they're running a corporation, an organization, a big group of drug dealers. They're collecting rents. They're using threats to collect these rents from drug dealers. They're paying up to the nasty mafia and so forth, and all that's alleged in the means and method of Count 16. That is a different kind of agreement. The goals are different. The objects are different than just defendants get together with someone else. How do you prove that the goals are different? How do we find that the goals are different? I think by looking at those means and methods, which have all these allegations, which aren't part of the first case, is to collect rents, to pay those rents up to the Mexican mafia. This is more than just two people getting together to sell drugs. I don't understand how the district judge is supposed to noodle this out, just because you put more stuff in the indictment. I think this gets part of the Bendis issue that the defendants have raised. This is not an easy inquiry, pre-trial, because ultimately what Bendis is getting at is post-trial, you bring a double check. They claim you looked at trial one, you looked at trial two, you looked at the evidence, it was the same conspiracy or not. Pre-trial. Pre-trial, you have to come forward with evidence that it is not, right? Did you do that? We relied on the allegations and the indictment, which I believe is sufficient, but let me try to explain why. It's because Bendis is getting at, it's not a, Bendis is clear, the burden is always on the defendants to prove double jeopardy, but the government has a, what they call, burden of persuasion to come back, and that's a very practical concern. To get that, it was a slick decision to get that, which is, it's not fair for the government to sit back and say, go ahead and prove it, you don't really know what our case is about, all you have is, you know, an indictment, and, you know, you can't prove it's the same conspiracy, so therefore you lose. And the court has said, you know, correctly so. The government then, because the government knows what the case is about, needs to say, no, this is our case. What the government said is, our case, as it's described, is in the 158 Overt Act. Now, the government could have come forward and said, no, here's some, you know, we're not limited to the 158 Overt Acts to prove the conspiracy, and we could have put in more. We could have put in 302s or recalls or so forth. We didn't, and we're stuck with that on this record. But the court doesn't have to hold it. The trial doesn't have to take admissible evidence under the rules of evidence. It just has to have enough to tease out, what are the two agreements? And the government basically said, look, the conduct alleged in this indictment is enough to show that these are the same, excuse me, these are different conspiracies. And this is an issue, the Calabrese opinion out of the Seventh Circuit, as Judge Posner wrote, which we talk about a little in our brief, is, I think, an instructive opinion, both on the application of the oral factors, but also on this point, where they say, yes, in fact, it plays out differently at trial. It's not too late, and the court can revisit the double-duty. Here, isn't it true that the evidence that we have shows that well before the earlier indictments, an investigation was ongoing into the larger RICO and drug conspiracies that were charged in 2009? Isn't that what the evidence shows? There has been an investigation over, yes, and the government's been investigating the MS-13 gang for a long time. It's not the very information, some of the very information that it charged in 2009. At the time, even back as far as I think it's 2005. It had some of the information, absolutely, Your Honor, but it didn't have an identity. But it chose to charge little discrete conspiracies instead of the larger conspiracy. And, Your Honor, this has been, this has developed a little bit in the record in response to the misconduct motions that aren't in front of the court today. But the real issue. It's going to have another interlocutory appeal. Well, luckily, Your Honor, they're not subject to an interlocutory appeal. So the misconduct claims, and that's actually an important point. There are these misconduct claims that the government was engaging in gamesmanship, which are serious claims, and I understand that. Those claims are not. I have to tell you, it's kind of looking like it. Well, Your Honor, I want to resist that conclusion. Okay, well, you've got it up. I want to bring that issue up to say this court doesn't have interlocutory jurisdiction over misconduct. And if they can come up on the final judgment to the extent there is one, obviously they'll be in front of the court. We're not trying to, you know, hide those issues from the court. If they're in the case, they'll have their day. But the issue, there is an explanation for what was going on here. And the basic explanation is the government, of course, they're looking at these people. Well, the MS-13 gang is a serious issue. Frank, you know you can charge them for a substantive count at any time and not charge them with conspiracy when you have an ongoing investigation of a larger conspiracy. You know you can do that. You also probably know that this drug conspiracy count in this 2009 indictment is really kind of duplicative when you consider the magnitude of the RICO conspiracy and your VICAR or BICAR charges. I mean, it's hard to say the sentencing guidelines or what the outcome would be, but it's hard for me to believe that you're going to add many more meaningful years to the sentences if you get convictions based on the count 16. That probably wasn't true if there's convictions on the RICO and just the practical amount of money. Right. I don't know. But the difference in the 846, in this case, and the reason why it couldn't have been brought earlier, is the government has evidence, you know, had evidence clearly that these people were selling drugs. What it didn't have and wasn't able to develop until later was evidence that there was this broader organization. Now, the government knew they were members of MS-13, but it's not per se a crime to be a gang member. It's not a crime to be a gang member and you can't walk into court and say, do a thought experiment and take the Milgram Morales indictment, say, and the Sundehouse indictment and just put them together with the 2007, the earlier indictment. And what you have is, say, Sundehouse selling drugs with another person to an informant on May 26, 2006, and you have Milgram Morales together selling drugs to a different informant on August 29 and December 12 of the same year, other than the fact that they're all MS-13 members. There's nothing to link those together and it wasn't until, and frankly, what happened is there was a cooperator who came forward and the government was able to develop and then that led to more evidence. It was able to kind of link this all together into a larger organization to charge a bigger conspiracy. So, it wasn't, the government just wasn't in a position in 2007 to charge the big case. Okay, that's fine, but why charge them with the smaller conspiracy at that time, knowing that you were planning, when you gathered all the evidence, to charge them with the larger conspiracy? There's two answers to that. One, the practical answer is, at that time the government just didn't have the information to charge the big conspiracy. It would have liked to, I'm sure, but couldn't do it. And then the question is, do you just wait and allow them to continue to commit crimes? Charge the substantive crimes. Yeah, and put them in jail and go. Some of them you did. Right, right. So, you charge them with that crime and got to play green men. They're all in jail. And then, in your 2009, you're charging that the conspiracy, their conspiracy, continued even after they were already serving time on the Substantive Act crimes and the other conspiracies. So, the conspiracy was still ongoing even though they were already serving time in jail. The conspiracy, it is charged that way. The conspiracy is charged, essentially, in the 2009 indictment, beginning back in the 90s and continuing up to the time of charging they were involved in this larger conspiracy. I do want to sort of, it isn't improper, and it does happen, that the government uses historical context, mostly in the RICO context, but there are priors, and then they're used as a racketeering act in a RICO case. So, I mean, someone who's involved in criminal, in the government's view, criminal conduct over a long period of time is likely going to commit multiple crimes and likely going to be involved in more than one criminal agreement. In the government's view, that's what happened here. Well, you know, you may be entirely right. What I'm struggling with is how Judge Reel could have possibly determined this based on what he had. I think the judge is permitted, I mean, the Alvarezma case, which I'm sure I'm mispronouncing, did look at it on this type of record, is permitted to look at the government, the evidence alleged in the indictment and the overt acts and the means and methods and so forth, and say, as charged, as it's alleged, the evidence alleged, shows that there's the view that this is a different in nature agreement than what was at issue in the prior case. And the group did have in front of it the plea agreements and so forth to charge it. How would he know it's just not more evidence put into the indictment rather than it's a different agreement? Well, that's what the Arnold factors are getting at, is trying to tease out what is the agreement. It looks at the duration. It looks at how many people. I mean, you can charge the first case in a bare bones way. You can charge the second one with everything and the moon and the stars. It could be the same thing. You just put more stuff in the indictment. How can Judge Reel decide whether that's what's happened here or not? Well, I think, I mean, that's true. If all we have, we don't have to charge any overt acts in 846. There's no overt act requirement. So if all you had in front of it, I think what Bendis, the worst case situation that Bendis is getting at, 2846 is neither charging instrument includes any overt acts. The only way to do it is to come in and essentially have an evidentiary type hearing where the government says, look, this is what the past case was about. Maybe you look at trial transfers. Maybe you look at the plea agreements. And I don't think there's much of an issue here about what the past cases were about because we do have all those plea agreements. What evidence would you put in if we were landed for an evidentiary hearing? I think the government could come forward with three or twos with investigative reports, with calls off of the wiretaps, potentially with some sort of either a summary eyewitness or a declaration explaining what the nature of the agreement would be and pointing to various pieces of evidence. I mean, there's a great deal of underlying evidence. So it's not an insurmountable burden they would be putting it to. No, if that's where it ends up, the government can clearly come back and flesh out the allegations. The next question I had for you was regarding Mr. Jobel, defendant Jobel. Right. I understood Mr. Tremont to say that there is not just overlap, there's a one-to-one correspondence between what he was charged with last time and what he's charged with this time. There's nothing new. That's what he said. I don't agree with that, Your Honor. What's new? So, it's what he was-there's two issues with respect to Jobel. He was charged with a conspiracy and pled to a conspiracy involving distribution of drugs between August 1 and August 4 of 2006. And that overlaps with, I think, essentially one overt act in the indictment. In the plea agreement, he agreed that he would be held accountable in the same course of conduct for a series of other drug transactions. And that sweeps in more, but not all, of the overt acts. And it sweeps in-he's charged with ten overt acts, and I believe it sweeps in seven or eight of them. But that-in terms of the double jeopardy analysis, the fact that he was- and, by the way, I said this thing when it came up. There was an issue of he was going to get a role enhancement for being a leader of the conspiracy. The government resisted the four-level role enhancement, which would have required five or more participants, on the theory that the conspiracy that he was charged with was just the August 1 to August 4 conspiracy, and the relevant conduct-he wasn't on the hook for the role enhancement, although he was being sentenced based on the relevant conduct of the additional drug distribution. But it's clear-it's clear after the Supreme Court's decision in wit that the fact that you're sentenced for relevant conduct doesn't mean that jeopardy is attached to that conduct. So now I'm asking you, what overt acts are you charging now, as far as Jehobo is concerned, that you didn't charge before? The only overt act that was in the conspiracy prior was 122, overt act 122, which is the August 1 sale. The other overt act later in the year, which stretched from that date until, I think it's June 20 of the next year, they were relevant conduct and they were counted-they went into the sentencing, but they weren't charged in the conspiracy count to which he pled in the 2007 case. What about overt act 158? Why wasn't that part of- That was a non-prosecution. That should have been stricken under the terms of the plea agreement. Yeah, it should have been stricken in the district court. We're conceding now. We're not opposing that it should be stricken, or that we will dismiss it if it goes back, whatever the proper procedure is, but the government will not proceed on 158 because it was covered in the part of the plea agreement. All right. Going back to this-sorry, just a second. Is there-did the same unit in the Department of Justice make all these charging decisions? Was it the same group, or do you have to, for example, I mean, can that-did the U.S. Attorney for the Central District make these charging decisions, or do you have to go higher for various of the different charges, like go to a different place for the RICO? It depends. RICO drug versus- Yeah, I mean, all charging decisions in the Central District go through the Central, the criminal chief in the district looks at them. RICO charges go to Washington, so this-and also need approval in Washington. So the second indictment, the 2009 indictment, had to go to Washington. It had to wait for Washington. Yeah, yeah. There's an office there, OCRS, which stands for Organized Crime and Racketeering Section, I think. That's within the criminal division in Washington, so it's a much more extensive process when racketeering is involved. Is that what delayed the filing of the 2019? That is part of it, but it's not the entire. The main part of that story is a cooperator that's referenced in the-it's not referenced in the Double Jeopardy, please, but there was a cooperator, a high-level MS-13 cooperator who the government developed, that then led to more information, allowed the government to sort of put together the evidence that allowed it to prove off the enterprise. And that's really what allowed the government to charge in 2009 as opposed to 2007. I'm happy to address anything else, Your Honors, unless there are no questions. Well, what is your view about should this matter stay before Judge Rill? The government isn't taking a position. I'm not authorized to ask for reassignment. We acknowledge, I believe, Defendant Sindehas, in his brief, put together a section. I think those transcripts speak for themselves, but we're not taking a position on that request, Your Honors. Thank you. Okay, well, rebuttal, and we'll take it back in the same order. May it please the Court, first of all- Let's get the clock set up. He used the time, so we'll give you two minutes. Thank you, Your Honor. First of all, with regard to the case law, I believe Counsel for Mr. Alfaro made a concession that the case law was against us. I did not understand that to mean the double jeopardy case law. And certainly on behalf of Mr. Malgar and Mr. Morales, we vigorously argue that the case law actually is in our favor, certainly with regard to the Bendis part of this issue and with regard to the Arnold factors. The second issue I want to address is the government's statement in its argument that it did not have enough information to charge the overall RICO conspiracy or the larger drug conspiracy in 2007 because it did not have a cooperator. I'm sure the cooperator helped. However, as has been produced in the discovery, as is attached to our motion to dismiss on the double jeopardy issue, as some of the other defendants have attached to their pleadings, there was a wiretap, an extensive one, in 2006, one of which was against my client. The government had a tracing device, I believe that's referenced in the wiretap applications attached to our pleading. They were following it around. They knew exactly who he was dealing with, and they even produced in the discovery that the capture on the wiretaps, the purported plot to murder Detective Flores, which we vigorously maintain the government can never prove. However, that information was available to them. They chose to charge, as I believe Your Honors have recognized, the 2006 versus 2007 conspiracy as a conspiracy. They could have charged substantive count. I think they actually did charge a substantive count in the 2007 indictment, but that's not what my client pleaded to and not the admissions that he made. The government is the one that required or negotiated the plea agreement with regard to a conspiracy charge, and I think they ought to be stuck with that because, as we set out in our papers, that is a smaller portion of this larger conspiracy that they subsequently alleged. Thank you. Mr. Kilkey. Two minutes on the clock for Mr. Kilkey. If I could refer Your Honors to my supplemental excerpts of records. I'm piggybacking on Mr. Frye. This is volume three, starting at page 147. What is the document you're looking at? Supplemental. My supplemental excerpts of records. What are you going to read? Oh, it's the wiretap application from 2006, approximately a year before the 2007 cases were charged. I want to just respond to the government's comment that they didn't know about the broader scope. What page are you reading from? It's supplemental excerpts of record volume three, page 147. There's a heading, Mara Salvatrucha, 13th Street Gang. Okay, and they knew about it, so what if they didn't know about it?  Okay, so what does that mean? That means that the government's statement that at the time that they were making the charging decision in 2007, they didn't have the information to make a broader charge. Okay, and that means what? It means that there's no reason other than an exclusion. I don't understand how that helps you. Does that mean there's double jeopardy or that they can't charge it, or what does that mean? It means there's double jeopardy. It means there's double jeopardy because they knew everything they knew in 2009. They knew it in 2007. It means there's... You're saying there's the same conspiracy. It's the same conspiracy. They knew it was the same conspiracy. The government knew it was the same conspiracy in 2006. And they just split it up and did exactly what Bendis says you cannot do, and received a tremendous advantage in terms of plea agreements, guilt concessions, factual bases that they drafted. I mean, if they knew... When did you get this application? It came up in discovery? It came up in discovery, yes. It has a discovery-based stamp page of 812 on the copy I have in my hand. And was this before Judge Real? It was not, no. I did not figure out the connection between the 2007 cases until we were briefing this case. Thank you, Mr. Kelsey. Mr. Cooper. Yes, Your Honor. To follow up on my comment when I said the case law was against us, I'm talking about the U.S. Supreme Court decision that came out a couple of years ago about the same charge versus conduct issue. But what I emphasize at closing is this. This issue about double jeopardy comes up a lot because prosecutors will push the envelope. And that's their role. They're advocates for the government. They have to push the envelope in the chase for public safety. But then there is the historical underpinnings of double jeopardy. And I think what Judge Real was struggling with was the case law and what he thought was a fair thing. And I think from his ruling, he did a Solomonic Act, which didn't appease anyone. He felt he couldn't dismiss the case on double jeopardy for whatever reason. But he understood how unfair it was to subject these defendants, and particularly my defendants, which he had sentenced in 05. So he was not a stranger to Mr. Alfaro. He knew Alfaro. And he had to sentence him twice because the Ninth Circuit had remanded the case back to him for resentencing. So he was trying to do what he felt was a fair thing, which was maybe he could not grant the double jeopardy motion, but he sensed the unfairness in subjecting Mr. Alfaro to new punishment for the same conduct. And I think what we're urging this court to do is to adopt that position, which is that, okay, if you can't split the baby, so to speak, well, then you grant the double jeopardy motion, because the government has to make a decision. They have a lot of power. And their power is to decide when to file and how to file. And they made a decision to do it piecemeal. And the defendants should not bear the brunt of it, particularly Mr. Alfaro. So we ask the court to grant the double jeopardy motion to Mr. Alfaro. Thank you. Ms. Norman. Just quickly, to follow up on the question of what the government knew and when they knew it, I'd like to point out in the government's representation in the sentencing memorandum with regard to my client, I'm quoting, First, with respect to the nature and circumstances of the offense pursuant to Section 355.3A.1, the instant offenses, referring to the two substantive drug offenses that he pled guilty to, while significant in their own right, took place in the larger context of defendants' continuing criminal activity and his affiliation and leadership role in the MS international gang. Defendant is both a documented and admitted member of MS-13. Indeed, he was a shot caller or leader of the Hollywood Locals clique, where he directed, supervised, and approved violent crimes, narcotics offenses, extortion, and other gang activities. Clearly, at this point, the government's claim that it was not aware or didn't have the evidence of the larger context is not correct, because they were arguing this as the basis for an increased sentence for my client. That's the only comment I'd like to make. Thank you, Ms. Norman. Mr. Dice, did you have anything else? Just briefly. The top of the appellate docket notes very clearly that a Notice of Appeal was filed on 10-18 of 2010, and I think that certainly indicates that a Notice of Appeal was properly filed, even though the subsequent entries do not reflect that notice. Thank you, sir. Mr. Kremen. If I may just address two things. The first one is, if you look at the government sentencing of position in the underlying case, which is part of our excerpts of records, you'll see their representations with regard to my client are similar to the scope, et cetera, that you've heard from counsel just a minute ago. They had all of the information with regard to his involvement in the MS-13, and they used all of that information in connection with the drug case and his sentencing on the underlying drug case. With regard to Your Honor's questions with regard to the various overt acts from the two cases, I put together a chart just taking the language from the underlying indictment and also the language from the current indictment and have them compared. If that would be of assistance to the court, I'd be happy to provide a copy. Thank you. May I do that, Your Honor? Is that in the brief? The information's in the brief, but the particular document that I created just copied the language from the indictment so that you could look at it and see what it says. Sure, Mr. Levins, if there's any objection. There's no argument in it. It's just copies of the language. Is that all right with you, Mr. Levins? That's fine. Thank you. Thank you. Thank you. If you'd kindly give it to Mr. Brown, we'll receive it and we'll make sure Judge Fletcher gets a copy of it as well. The case just argued is, I want to thank counsel, especially the appellants, for organizing the way you did. When I see seven lawyers here, I pray this is going to turn into a free-for-all-like Republican debate or something, but it's working out very well. Thanks to you. Thank you. We'll stand and recess.
judges: Fletcher, Silverman, Wardlaw